UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | No. 2:08-CR-102 |
| ) | |
| JESUS HUERTA, *ET AL.* ) | |

**REPORT AND RECOMMENDATION
REGARDING FLORES-DELACRUZ'S MOTIONS TO SUPPRESS (DOCS. 544
AND 700)**

The defendant Javier Flores-Delacruz has filed a motion to suppress items seized during a vehicle stop. (Doc. 544). He subsequently filed an amended motion to suppress, (Doc. 700). These motions have been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636. An evidentiary hearing was held on December 9, 2009.

On December 4, 2007, a federal arrest warrant was outstanding for Jesus Huerta for federal firearms offenses. Numerous officers of the Washington County Sheriffs Office were surveilling Jesus Huerta's house on Cherokee Road in Johnson City in an effort to effect his arrest. During the course of that surveillance, the officers observed a black Chevrolet truck leave the premises. Sergeant William Gregg followed in his unmarked car, believing that Huerta might be in it. After confirming that the truck was going over fifty miles per hour in a forty-mile per hour zone, Gregg activated his blue lights, and the truck pulled over. Other officers simultaneously arrived. The number of officers present at the traffic stop was more

than justified by the fact that they believed that a federal fugitive, who was charged with firearms violations, was present in the vehicle.

Sergeant Gregg walked to the driver's window, and Officer Sam Phillips walked to the passenger window. Two other officers positioned themselves on either side of the vehicle, at the rear.

The truck was a rather large vehicle, and sat relatively high above the ground. It was high enough that Sergeant Gregg could not discern what the driver might have in his hands, and for that reason asked the driver to exit. Officer Phillips, who was at the passenger side, had no difficulty at all seeing into the passenger compartment; Phillips is 6'7" tall. Phillips observed on the passenger floorboard of the truck, only partially beneath the seat, a gallon-sized ziplock bag full of currency. He also saw on the floorboard a neatly folded $100 bill. Training and prior experience had taught Officer Phillips that drug users often use a currency bill, folded in this particular fashion, to hold illegal drugs.

The passenger purportedly spoke no English, but Phillips nevertheless successfully communicated to him that he wanted to see some identification. The passenger handed Phillips a Texas identification card that bore the name James Loya, and the photograph of Jesus Huerta. The passenger, it was later learned, was the defendant herein, Javier Flores-Delacruz.

Phillips handed the Texas identification card to another officer, who ultimately handed it to Sergeant Gregg. Seeing only the identification card, Gregg thought he had successfully apprehended Jesus Huerta, and he radioed another police vehicle that he had done so. Gregg

2

was rather surprised, however, when officers in that other vehicle radioed back, "So do we." As it turned out, those other officers indeed did have Mr. Huerta under arrest.

Gregg and another officer, Lieutenant Remine, learned from Phillips of the ziplock bag and the folded $100 bill in the floorboard. As Gregg was awaiting a report from his dispatcher concerning his request for a records check, he overheard Lieutenant Remine ask the driver, Miller-Guerra[1], if he had anything illegal in the vehicle. Miller-Guerra said he did not, at which point Remine asked Miller-Guerra for permission to search the vehicle. Miller-Guerra consented.[2] It is noted that Miller-Guerra spoke English.

A search of the vehicle revealed, of course, the ziplock bag with currency, as well as another bag containing currency, all of which totaled in excess of $23,000.00. The folded $100 bill contained a white power believed to be cocaine and another bag of cocaine was found in the truck. Additionally, numerous cell phones were found throughout the cab of the truck.

As an initial matter, there was probable cause for the traffic stop of this vehicle. Not only was Sergeant Gregg "pacing" the vehicle, his vehicle was equipped with radar. The truck was proceeding in excess of 10 miles an hour over the posted speed limit. The fact that the officers were looking for Jesus Huerta to arrest him on an outstanding federal warrant is

---

[1] Also a defendant in this case.

[2] Remine himself did not testify. He is no longer employed by the Washington County Sheriffs Office, because he was terminated for using marijuana. Gregg, however, clearly heard Remine request permission of Miller-Guerra to search the vehicle, and he heard Miller-Guerra give his consent. Gregg is believed, unreservedly.

3

quite beside the point; so-called pretextual traffic stops are permissible so long as the officer has probable cause to believe that a traffic violation had occurred. *See, United States v. Ferguson,* 8 F.3d 385 (6th Cir. 1993). *See also, Whren v. United States*, 517 U.S. 806 (1996).

Almost immediately after the traffic stop, Officer Phillips saw the ziplock bag of currency and the folded $100 bill on the floorboard of the truck. Counsel went to great pains to extract from the officers that there was "nothing illegal" about a bag full of money or a folded $100 bill. That argument, however, misses the point. A ziplock crammed full of currency is more than enough to arouse the suspicions of a normal citizen, much less a trained police officer. By the same token, Officer Phillips immediately appreciated the significance of the folded $100 bill on the floor of the truck, recognizing that it likely contained a contraband substance. The bag of money and the folded bill, both of which were in Phillips' plain view, immediately altered the situation from a mere traffic stop to an investigative detention in the sense of *Terry v. Ohio*, 392 U.S. 1 (1968). Sergeant Gregg and Phillips clearly had a reasonable suspicion, based on articulable facts, that criminal activity was afoot. In any event, relatively little time had expired up to this point, and Sergeant Gregg was still awaiting the report from his dispatcher. Miller-Guerra in the meantime had given his consent to search the vehicle, and that search revealed the contraband and evidence described previously. A search that is conducted pursuant to a valid consent is, of course, an exception to the Fourth Amendment's requirement for a warrant. *See, Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).

4

There is no basis to suppress any of the evidence discovered in, and seized from, Miller-Guerra's vehicle on December 4, 2007. One further matter, however, should be discussed. Counsel vigorously argued that certain "non-contraband" evidence should be returned to him because a state criminal prosecution and an accompanying forfeiture action was dismissed, but the items subject to that forfeiture action had not been returned to him.

The only "non-contraband" items seized from this defendant as a result of the December 4, 2007, traffic stop was the false Texas identification card. Various other documents that were of concern to defendant's counsel were not seized at that time, but rather were seized from defendant's person *when he was arrested in Texas,* on the basis of this court's warrant. In other words, those documents have no connection to the December 4, 2007 traffic stop and search.

It is respectfully recommended that defendant's motion to suppress and amended motion to suppress be denied.[3]

Respectfully recommended,

      s/ Dennis H. Inman
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

5